433 A.2d 472

**COMMONWEALTH of Pennsylvania, MILK MARKETING BOARD, Appellee,**

v.

**KREIDER DAIRY FARMS, INC. et al., Appellants.**

Supreme Court of Pennsylvania.

Argued May 20, 1981.

Decided July 22, 1981.

John Paul Kershner, Lancaster, for appellants.

Daniel T. Flaherty, Jr., Asst. Atty. Gen., for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from a final decree of Commonwealth Court permanently enjoining appellant from selling milk at its store located on Route 72, Manheim, Pennsylvania at prices below the minimum prices established by the Milk Marketing Board. The appeal comes to us pursuant to § 723(a) of the Judicial Code, 42 Pa. C.S.A. § 723(a) as an appeal from a final order of Commonwealth Court. We reverse.

The case was commenced in the Commonwealth Court when the Pennsylvania Milk Marketing Board filed a complaint in equity and petition for preliminary injunction to prevent appellant from continuing to sell milk at his Manheim store on Route 72 below the minimum price established by the Board for the area in which the store is located. After hearing, the Commonwealth Court issued a Decree Nisi on February 27, 1980 granting injunctive relief to the Commonwealth. Exceptions were taken to the Decree Nisi, and on April 16, 1980 the court filed an opinion on the exceptions and entered a final decree permanently enjoining the appellant from selling milk at prices below the minimum set by the Board.

The Milk Marketing Law, Act of April 28, 1937, P.L. 417, Art. I, § 101, *et seq.* (currently Act of July 31, 1968, P.L. 963, No. 294, § 1, *et seq.*, 31 P.S. § 700j-101 *et seq.* (Supp. 1981–1982) is the statutory scheme pursuant to which the Milk Marketing Board is charged with the responsibility of regulating virtually every aspect of the production and sale of milk and milk products in the Commonwealth. Whereas most retailers of milk are subject to the restrictions of minimum pricing which may be established by the Board, there is an exemption from these restrictions for certain

milk dealers who produce and sell only limited amounts of milk. 31 P.S. § 700j-402 (Supp. 1981–1982).

Appellant Kreider Dairy Farms, Inc. operates a dairy farm in Lancaster County, Pennsylvania consisting of several contiguous and several noncontiguous tracts of land on which the appellant grows feed crops, manages a dairy herd, processes milk, and operates two retail stores where milk is sold to the public. One store is located on the same tract of land where the herd and the production facilities are located. That the appellant is not subject to the Board's pricing regulation at this store is not disputed. However, the second store is located on an eighty acre tract noncontiguous to the tract on which the herd and production facilities are located. This land is used for the growth of feed crops as well as for the sale of milk at the second store. Milk is transported approximately 3.6 miles from the processing facility to the second store by use of the public highways.

Section 700j–402 of the Milk Marketing Law, 31 P.S. § 700j-402 (Supp.1981–1982) provides that a milk dealer may be exempted from the licensing requirements of the act provided that in cash sales of milk to consumers:

> he shall have produced all the milk on the farm where sold and such milk has at no time left the producer's farm prior to its sale to the consumer and he shall have neither purchased, handled or received any milk from other producers or handlers for cash sale or any other purpose and his total sales to consumers do not exceed two gallons to any one consumer in any one day . . . .

The issue in this case, then, is whether the milk sold at the second store "has at no time left the producer's farm prior to its sale to the consumer." If it has left the farm, the exemption of § 402 is not available to appellant; if it has not left the farm, the exemption is available.

■ The court below found that the several noncontiguous tracts of land owned by appellant make up a single farm and that these tracts are a part of an enterprise which is "operated as an integrated dairy agriculture unit." Since it is commonplace that a farm may consist of various nonconti-

guous parcels of land, purchased over years as the need may have arisen, and that these noncontiguous parcels may be integral to the functioning of the entire farm unit, we hold that where there is such integral functioning of noncontiguous parcels, the transportation of milk from one noncontiguous parcel of a farm to another for short distances over public roads does not remove the dairy farmer so transporting milk from the exemption of § 402.

■ In *Milk Control Commission v. Battista*, 413 Pa. 652, 198 A.2d 840 (1964), *app. dismissed, Battista v. Milk Control Comm.*, 379 U.S. 3, 85 S.Ct. 75, 13 L.Ed.2d 22 (1964), this Court addressed the question of whether the "jug-dealer" exemption of Section 402 was available to a producer who sent his milk to an outside processor for homogenizing, pasteurizing and bottling. After processing, the producer received the same milk back from the processor for sale to consumers. In *Battista* the parties stipulated that " 'The only issue involved . . . is the right of defendants to sell milk at unregulated prices where such milk is processed off the farm where produced and sold.' " *Id.* 413 Pa. at 655, 198 A.2d at 841. Although *Battista* does not control the present case because of the difference in legal issues, that case is, nevertheless, relevant because of its construction of Section 402:

In Section 402, the Legislature has set forth the conditions under which farmer-producers may sell directly to consumers the milk of their herds produced on their farms without disrupting or endangering effective regulation of the remaining industry. In exempting the producer-handler, the Legislature not only sought to aid him in selling such milk but also to give recognition to the historical custom that individual, self-sufficient farm activity has traditionally been free of many forms of licensing and regulations. This exemption is an acknowledgement by the Legislature of the need to permit the local, family farm to continue to function unregulated by the Milk Control Commission in this particular activity.

*Id.*, 413 Pa. at 657, 198 A.2d at 842. In the present case, the record indicates that Kreider Dairy Farms, Inc., is a Pennsylvania corporation engaged in the business of operating a dairy herd, producing milk, processing milk, and selling the milk at two retail dairy stores. The corporation leases its land, buildings, equipment and livestock from Noah W. Kreider and Sons, a partnership.

If Kreider were to have acquired the land between the main parcel and the eighty acre tract, or a corridor linking the two parcels, presumably the Board would not have brought this action, for then Kreider would have been able to transport milk from his processing facility to the second store without "leaving" his farm under any definition of that term. To require the acquisition of the land between the two parcels, however, would be to exalt form over substance. If Kreider owned a legal interest in a corridor of land wide enough to accommodate a milk truck and connecting the eighty acre parcel with the main parcel, over which milk were transported to the second store, presumably Kreider would not be subjected to price regulation on the grounds that his milk never left the farm. The only variable between the present case and the hypothetical case would be ownership of a legal interest in the corridor of land. Kreider, under the hypothetical situation, would sell the same milk to the same customers in the same volume and would have the same impact on the retail marketing of milk that he now has. Nothing would be different except that Kreider would own a legal interest in more land than he now does. To base exemption from milk price regulation of family farming on the dubious requirement that the farm consist of contiguous parcels would be unjust in that it would require the dairy farmer to make useless acquisitions of land in order to avoid state regulation of milk prices on noncontiguous parcels of the same farm.

The critical facts in this case are that the various parcels of land owned by Kreider are parts of one farm and that the farm is family related and self-sufficient in its ability to produce milk for sale to consumers. That the milk is moved

from one part of this agricultural unit to another for short distances over public roads does not remove the producer from exemption under Section 402 because the essence of the transportation is that it occurs between parts of the same farm. As mentioned earlier, it is not unusual for farms to operate by utilizing one or more noncontiguous tracts of land. If the various noncontiguous tracts of land are operated as an agricultural unit, it is contrary to the legislative purpose of the Milk Marketing Act, as articulated in *Batista, supra,* to hold that intra-farm transportation of milk between segments of the same farming operation disqualifies a farmer from the exemption of Section 402. The purpose of the Act is to exempt self-sufficient family farming operations from the pricing regulations of the Board, and that purpose must not be frustrated by a reading of the Act which fails to take into account the realities of land use in farming.

Reversed.

NIX, J., concurs in the result.

ROBERTS, J., files a dissenting opinion.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or result of this case.

ROBERTS, Justice, dissenting.

The Commonwealth Court properly enjoined a clear violation of the Milk Marketing Law. Unlike the majority, I would affirm the decree.

Appellants, Kreider Dairy Farms and Noah Kreider and Sons, own two tracts of land on which they conduct their dairy farming operations. Tract 1 was the first parcel they acquired. On this tract appellants house and feed their dairy cows, and grow feed crops. Also included on this tract is a milk processing plant, as well as a retail store where milk is sold below prevailing retail prices established for the milk district by the Milk Marketing Board. It is agreed that sales below retail at this store are permissible under the "jug-dealer" exemption contained in section 402 of the Milk

Marketing Law, Act of April 28, 1937, P.L. 417, as amended, 31 P.S. § 700j–402 (Supp.1981).

Tract 2 is a smaller parcel located approximately 3.5 miles from Tract 1 and accessible from Tract 1 by public roads. The tract was acquired by appellants in 1974 after the Tract 1 dairy farm and milk production facility had been in operation for some time. This second tract was acquired to supplement feed production for the Tract 1 operation. The parties have stipulated that the tracts of farmland, buildings, equipment and livestock are operated by appellants "as a single operation, with the same owners, management, employees and equipment, and that the accounting for the operation is recorded as a single entity, all without distinction based on any fact of contiguity of real estate."

In 1979, after field investigation, the Milk Marketing Board determined that appellants were operating a retail milk outlet on the second tract where, without Board approval, milk was being advertised and sold at prices below minimum prices. The exclusive source of milk for sale at this second outlet was the first tract's production facilities. The Board determined that, unlike the first retail outlet, this second retail outlet was not within the "jug-dealer" exemption of section 402.

The Board filed a complaint in equity and petition for preliminary injunction in the Commonwealth Court seeking to prohibit appellants' alleged violation of the Milk Marketing Law. At a hearing before Judge Craig on the request for preliminary relief, the Board presented evidence indicating that the pricing structure in the area where appellants' stores were located had begun to deteriorate because of appellants' pricing practices. One retailer had begun to charge prices below the minimum prices set for the area to "meet the competition." Judge Craig granted preliminary relief. No appeal was taken and, after a stipulation that no further evidence would be presented, the preliminary injunction was made permanent. This appeal followed.

Section 402 of the Milk Marketing Law provides:

"The board may, by official order, exempt from the license requirements provided by this act milk dealers or handlers who purchase or handle milk in a total quantity not exceeding one thousand five hundred pounds in any month, and milk dealers or handlers selling milk in any quantity only in markets of a population of one thousand, or less, for local consumption. The board may, by official order, exempt stores, or any class thereof, from the license requirements provided by this act. However, milk dealers or handlers exempted by this section from the license requirements of this act shall continue to be subject to all the other provisions of this act relating to milk dealers or handlers: Provided, however, That in cash sales of milk to consumers if he shall have produced all the milk on the farm where sold and such milk *has at no time left the producer's farm prior to its sale to the consumer* and he shall have neither purchased, handled or received any milk from other producers or handlers for cash sale or any other purpose and his total sales to consumers do not exceed two gallons to any one consumer in any one day, the producer so selling milk shall be exempt from the provisions of this act" (emphasis added).

Thus the sole inquiry is whether the milk "has at no time left the producer's farm prior to its sale to the consumer." Regardless of the majority's conclusion that appellants' two tracts were integrated, there remains the fact that milk produced on Tract 1 was transported approximately 3.5 miles on public roads to the second retail outlet. The milk, therefore, left the farm before being sold, and the exemption is not available to appellants. As Judge Craig stated,

"[t]he milk produced on the main parcel necessarily leaves the farm when transported along public roads, not part of the farm, to reach the smaller parcel on which it is sold at the second store. Although the milk thus is returned to the farm, it is impossible to say that it has 'at no time' left the farm."

In sustaining the constitutionality of the Milk Marketing Law and the "jug-dealer" exemption, this Court has observed:

"In Section 402, the Legislature has set forth the conditions under which farmer-producers may sell directly to consumers the milk of their herds produced on their farms without disrupting or endangering effective regulation of the remaining industry. In exempting the producer-handler, the Legislature not only sought to aid him in selling such milk but also to give recognition to the historical custom that individual self-sufficient farm activity has traditionally been free of many forms of licensing and regulations. This exemption is an acknowledgement by the Legislature of the need to permit the local, family farm to continue to function unregulated by the Milk Control Commission [(now Milk Marketing Commission)] in this particular activity."

*Milk Control Comm'n v. Battista*, 413 Pa. 652, 657, 198 A.2d 840, 842 (1964). Manifestly, this very "disruption" and "endangerment" of "effective regulation of the remaining industry" has occurred here. Because of appellants' "chain-store" operation, at least one retail outlet not belonging to appellant has violated minimum price regulations. The majority's endorsement of this "chain-store" device will encourage further violations, both here and throughout the Commonwealth.

I must dissent.